HAZEL M. WARD v. DURHAM LIFE INSURANCE CO.

No. 872SC790

(Filed 31 May 1988)

1. **Insurance § 18— life insurance—misrepresentations in application alleged— striking of portions of plaintiff's affidavit improper**

     The trial court erred in striking portions of plaintiff's affidavit which were not offered to prove the truth of the matters asserted but were instead offered to show that defendant's agent had knowledge of the insured's driving while impaired conviction and his high blood pressure condition; however, the court properly struck portions of plaintiff's affidavit as to defendant's notice and as to the basis for insured's signing of the application, since those statements were legal conclusions.

2. **Insurance § 18— life insurance—misrepresentations in application alleged— omissions attributable to applicant or insurer—genuine issue of material fact**

     In an action to recover on an insurance policy where defendant denied coverage on the basis of misrepresentations in the application for insurance, the trial court erred in entering summary judgment for defendant where there was a genuine issue of material fact as to whether the omission of material facts in the application was attributable to the applicant or to the insurer in

that plaintiff contended that she and her husband gave defendant's agent a complete and truthful disclosure of insured's prior driving while impaired conviction and blood pressure condition; defendant's agent then informed plaintiff that, since these events occurred more than two years earlier, the applicant would not be prevented from obtaining insurance; trusting in the assurances by defendant's agent, insured signed the application in good faith; and there was no suggestion of collusion or fraud between plaintiff's insured and defendant's agent.

Judge PARKER dissenting.

APPEAL by plaintiff from *Llewellyn, Judge.* Judgment entered 1 May 1987 in Superior Court, BEAUFORT County. Heard in the Court of Appeals 14 January 1988.

*Stephen A. Graves for plaintiff appellant.*

*Young, Moore, Henderson & Alvis by Robert C. Paschal and Theodore S. Danchi for defendant appellee.*

COZORT, Judge.

Plaintiff filed this action to recover benefits under her deceased husband's life insurance policy which was issued by defendant. Defendant denied coverage on the basis of misrepresentations in the application for insurance and moved for summary judgment. From the trial court's order granting summary judgment, plaintiff appeals. We reverse.

On 15 October 1985, defendant issued a life insurance policy to plaintiff's husband, Vernon Ward. Plaintiff, the beneficiary under the policy, sought to recover its proceeds after her husband was killed in an automobile accident on 26 January 1986. Defendant refused to pay the benefits on the grounds that there were material misrepresentations made in the application for insurance.

On 12 July 1986, plaintiff filed suit to collect the insurance proceeds. Defendant answered alleging that the insurance contract was null and void because of the misrepresentations and moved for summary judgment. Defendant filed supporting affidavits which stated that Mr. Ward had failed to report his past treatment for high blood pressure and a prior conviction for driving under the influence in his application and that his application would not have been approved had this information been included.

Plaintiff submitted an opposing affidavit which stated the following:

On 5 October 1985, plaintiff and her husband agreed to apply for a life insurance policy through Brenda Ward, Mr. Ward's first cousin. Ms. Ward advised them on that day that she was an agent for defendant. Ms. Ward asked plaintiff and her husband questions from an application for insurance; and, after they answered the questions orally, she recorded their responses on the application herself. When they reached question 30(d), Ms. Ward asked Mr. Ward if he had ever been convicted of driving under the influence. Plaintiff and her husband informed her that he had been so convicted in October, 1982. Ms. Ward responded that since the conviction was more than two years old it would not prevent him from obtaining insurance with her company. When they reached question 32(d), she asked Mr. Ward if he had ever been treated for high blood pressure. Mr. Ward informed her that he had been treated for high blood pressure in 1983, but had not had any problems since that time. Ms. Ward responded that since the treatment had occurred more than two years ago it would be all right and would not prevent Mr. Ward from obtaining insurance with her company. After she completed marking the application, Mr. Ward signed it and paid the premium requested.

After plaintiff filed her affidavit, defendant moved to strike several portions of it. The trial court granted this motion and subsequently granted defendant's motion for summary judgment. From this judgment, plaintiff appeals.

[1] Plaintiff argues that the trial court erred in granting defendant's motion to strike the following portions of her affidavit:

[1] That as to question 30(d) and (k), my husband and I advised Ms. Ward that he had in fact been convicted of driving under the influence in the District Court of Beaufort County in October of 1982 and that he had obtained a limited driving privilege.

[2] My husband advised her that he had been treated by Dr. Boyette for high blood pressure in 1983. Then she asked whether or not this had occurred within two years. My husband and I then conferred and advised her that it had been more than two years since he had been treated by

Dr. Boyette and he had not had any problems since that time.

[3] That as a result of the responses that were given by my husband and I to Ms. Brenda Ward, Durham Life Insurance Company had notice of my husband's medical treatment for high blood pressure and his conviction for driving under the influence of alcohol in 1982.

[4] My husband signed the application based on this representation.

N.C. Gen. Stat. § 1A-1, Rule 56(e) provides that "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence and shall show affirmatively that the affiant is competent to testify to the matters stated therein . . . ." The first two portions of plaintiff's affidavit stricken by the trial court satisfy these requirements. Although these statements, based upon the conversation between plaintiff, her husband and defendant's agent, are hearsay, they were not offered to prove the truth of the matter asserted. Rather, they were offered to show that defendant's agent had notice of Mr. Ward's driving while impaired conviction and his high blood pressure condition. As such, they constituted an exception to the hearsay rule. *See Wilson v. Indemnity Corp.*, 272 N.C. 183, 158 S.E. 2d 1 (1967). Therefore, these statements were admissible into evidence and the trial court erred in striking them from the affidavit.

The remaining two statements which were stricken, however, were legal conclusions. A trial court may not consider portions of an affidavit not based on the affiant's personal knowledge or which merely state the affiant's legal conclusion. *Singleton v. Stewart*, 280 N.C. 460, 186 S.E. 2d 400 (1972). Therefore, the trial court correctly struck these statements from plaintiff's affidavit.

[2] Plaintiff also argues that the trial court erred in granting defendant's motion for summary judgment. When we consider the two erroneously stricken portions of plaintiff's affidavit along with the other affidavits and pleadings, we agree that summary judgment was erroneously granted.

"The test on a motion for summary judgment made under Rule 56 and supported by matters outside the pleadings is wheth-

er on the basis of the materials presented to the court there is any genuine issue as to any material fact and whether the movant is entitled to judgment as a matter of law." *Barbour v. Little,* 37 N.C. App. 686, 692, 247 S.E. 2d 252, 256, *disc. rev. denied,* 295 N.C. 733, 248 S.E. 2d 862 (1978). The movant has the burden of proof on the "lack of any triable issue of fact by the record properly before the court." *Singleton v. Stewart,* 280 N.C. at 465, 186 S.E. 2d at 403. Once the movant has made and supported his motion for summary judgment, the burden shifts to the other party "to introduce evidence in opposition to the motion setting forth 'specific facts showing that there is a genuine issue for trial.'" *Metal Works, Inc. v. Heritage, Inc.,* 43 N.C. App. 27, 31, 258 S.E. 2d 77, 80 (1979). The party opposing the motion "does not have to establish that he would prevail on the issue involved, but merely that the issue exists." *In re Will of Edgerton,* 29 N.C. App. 60, 63, 223 S.E. 2d 524, 526, *disc. rev. denied,* 290 N.C. 308, 225 S.E. 2d 832 (1976).

In the case *sub judice,* plaintiff has shown that there is a genuine issue as to whether the omission of material facts in the application is attributable to the applicant or to the insurer. Although "[a]n insurer's duty under an insurance contract may be avoided by a showing that the insured made representations in his insurance application which were material and false," *Willetts v. Insurance Corp.,* 45 N.C. App. 424, 428, 263 S.E. 2d 300, 304, *disc. rev. denied,* 300 N.C. 562, 270 S.E. 2d 116 (1980), "'an insurance company cannot avoid liability on a life insurance policy on the basis of facts known to it at the time the policy went into effect.'" *Northern Nat'l. Life Ins. v. Miller Machine Co.,* 63 N.C. App. 424, 429, 305 S.E. 2d 568, 571 (1983). "[K]nowledge of or notice to an agent of an insurer is imputed to the insurer itself, absent collusion between the agent and the insured." *Id.* at 429, 305 S.E. 2d at 571-72. "It is well established that when the evidence raises a question of whether a misrepresentation in an application for insurance is attributable to the insured or to the agent of the insurer alone, the question must be resolved by the finder of fact." *Id.* at 429-30, 305 S.E. 2d at 572.

In this case, there is no forecast of evidence of collusion or fraud between plaintiff's husband and defendant's agent. According to plaintiff's affidavit, plaintiff and her husband gave a complete and truthful disclosure of Mr. Ward's prior driving con-

Ward v. Durham Life Ins. Co.

viction and blood pressure condition. Defendant's agent then informed plaintiff and her husband that since these events occurred more than two years earlier, Mr. Ward would not be prevented from obtaining insurance. Trusting in the assurances by defendant's agent, Mr. Ward signed the application in good faith.

Defendant, relying on *Inman v. Woodmen of the World,* 211 N.C. 179, 189 S.E. 496 (1937), and *McCrimmon v. N.C. Mutual Life Ins. Co.,* 69 N.C. App. 683, 317 S.E. 2d 709, *disc. rev. denied,* 312 N.C. 84, 322 S.E. 2d 175 (1984), contends that any knowledge by its agent cannot be imputed to it once the insured signed the application. *Inman* and *McCrimmon* provide that an insurer has the right to rely upon the statements and representations contained in an application of insurance, if it is in writing and is signed by the applicant, even if an agent of the insurer filled out the application. Any false statements contained in the application would be imputed to the insured and not the insurer.

We believe that the facts of the present case are distinguishable from those in both *Inman* and *McCrimmon.* In *Inman,* the applicant gave truthful answers about his physical condition to the agent who failed to include this information in the application. The insured signed the application without reading it and when his beneficiary sought to recover the policy proceeds, the trial court dismissed the action. The Supreme Court affirmed and held that the agent's knowledge of the false representation could not be imputed to the insurer. The agent informed the applicant that despite his past medical problems, "I think I can get you by. You don't have to have a medical examination anyhow." This statement should have apprised the insured of the agent's intention to *deceive* the insurance company as to his true physical condition. By signing the application the insured condoned the deception.

In *McCrimmon,* plaintiff purchased life insurance on his son who suffered brain damage at birth. Although plaintiff informed the agent of his son's condition, the agent failed to include this information in the application. Plaintiff, without reading it, signed the completed application which falsely stated that his child did not have a defect or deformity. This Court held that, under *Inman,* the false statements in the application were imputed to plaintiff.

It is important to note that *Inman* did not establish a "bright line" rule that an insurer can avoid coverage every time the application is signed by the insured and the application contains a false answer to a question. The court specifically found that the applicant did not read the application or request that it be read to him and that his failure to do either "was not induced by any fraud on the part of the agent." *Inman*, 211 N.C. at 182, 189 S.E. at 497. Likewise, in the *McCrimmon* case we find no indication that there were any facts to support a theory that the agent fraudulently induced the applicant to sign the application.

The facts here make this case distinguishable. Plaintiff's affidavit clearly raises the factual issue of whether the agent fraudulently induced Mr. Ward to sign the application and whether that action should be imputed to the insurer. Plaintiff's husband signed the application only after the agent assured him that since the events occurred more than two years earlier, it was all right and would not prevent him from obtaining insurance. A jury could reasonably find that Mr. Ward justifiably inferred from the agent's statement that these past events were irrelevant to the insurance company in applying for insurance.

We hold that the pleadings and affidavits present a material issue of fact on whether the knowledge of the misrepresentation should be imputed to the insurer. Therefore, the trial court's judgment granting summary judgment is reversed and the case is remanded for a new trial.

Reversed and remanded.

Judge GREENE concurs.

Judge PARKER dissents.

Judge PARKER dissenting.

Believing as I do that the facts of this case are not distinguishable from *Thomas-Yelverton Co. v. Insurance Co.*, 238 N.C. 278, 77 S.E. 2d 692 (1953), *Inman v. Woodmen of the World*, 211 N.C. 179, 189 S.E. 496 (1937) and *McCrimmon v. N.C. Mutual Life Ins. Co.*, 69 N.C. App. 683, 317 S.E. 2d 709, *disc. rev. denied*, 312 N.C. 84, 322 S.E. 2d 175 (1984), I respectfully dissent.

In *Thomas-Yelverton, supra,* the Court stated:

> The rule with respect to the knowledge of an agent be-
> ing imputable to his principal is well stated . . . in the follow-
> ing language: "In the absence of fraud or collusion between
> the insured and the agent, the knowledge of the agent when
> acting within the scope of the powers entrusted to him will
> be imputed to the company, though a direct stipulation to the
> contrary appears in the policy or the application for the
> same." However, it is otherwise when it clearly appears that
> an insurance agent and the insured participated in a fraud by
> inserting false answers with respect to material facts in an
> application for insurance. The knowledge of the agent in such
> instances will not be imputable to his principal. (citing cases).
>
>     . . . .
>
> In the instant case, when the insured signed the applica-
> tion he knew the agent had written the answers to the ques-
> tions contained in it; and by signing it in the form submitted,
> he represented that the answers were true.

*Id.* at 281-83, 77 S.E. 2d at 694-95.

In her brief, plaintiff cites a number of cases beginning with
*Fishblate v. Fidelity Co.,* 140 N.C. 589, 53 S.E. 354 (1906) to sup-
port the position that the knowledge of the agent is imputed to
the insurance carrier. However, *Fishblate, supra,* and *Northern
Nat'l Life Ins. v. Miller Machine Co.,* 63 N.C. App. 424, 305 S.E.
2d 568 (1983), *aff'd,* 311 N.C. 62, 316 S.E. 2d 256 (1984), relied upon
by the majority, are distinguishable in that in those cases there is
either a question or no showing as to the insured's knowledge of
the contents of the application. There is no evidence that the in-
sured signed the application. Moreover, it is noteworthy that in
*Thomas-Yelverton, supra,* where there was no dispute that
insured signed the application after the answers were inserted by
the agent, the Court acknowledged *Fishblate* and its progeny, but
rejected the plaintiff-appellant's argument. Accordingly, in this
case I do not agree with plaintiff's oral argument that this Court
in *McCrimmon, supra,* misinterpreted *Inman, supra.*

In the instant case from the uncontradicted evidence, plain-
tiff would have been uninsurable and rejected for insurance had

the questions been answered truthfully. The rule is, and plaintiff does not dispute, that misrepresentations as to questions affecting insurability are material as a matter of law. *Tolbert v. Insurance Co.*, 236 N.C. 416, 72 S.E. 2d 915 (1952).

The sole purpose of the application is to obtain accurate information for underwriting purposes. Without the false statement inserted by the agent, the uninsurable applicant would not have received a policy. Plaintiff has made no showing that her husband was prevented or prohibited from reading the application before he signed. When Mr. Ward signed the application, he adopted the statements and represented that they were true. If Mr. Ward had corrected the false statements, he would not have obtained the insurance; by signing, he benefited from the agent's action. Defendant has tendered the return of the premiums with interest thereon, and in my view owes nothing more.

Furthermore, even under the majority's theory of the case, I do not think the evidence is sufficient to raise an inference that insured was induced not to give a truthful application by statements of the agent. According to plaintiff's affidavit, the agent told plaintiff and her husband that because Mr. Ward's conviction and treatment for high blood pressure had occurred more than two years before the date of the application, "this was all right and would not prevent [Mr. Ward] from obtaining insurance with [defendant]." Although this statement may have led plaintiff and her husband to believe that the omitted information was not especially important, the agent did not expressly state that they were not required to report it. Plaintiff did not aver that the agent told them that the questions only required information from the past two years, nor did she aver that the agent advised or suggested that her husband not include the omitted information in the application.

For the foregoing reasons, I vote to affirm.